UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br><br>Plaintiff, )<br>)<br>v. )<br>)<br>NOBEL LEARNING COMMUNITIES, INC., )<br>)<br>Defendant. )<br>) | 09 1818<br><br>COMPLAINT<br><br>A TRUE COPY CERTIFIED TO FROM THE RECORD<br>DATE_____APR 2 9 2009_____<br>ATTEST:____[signature]____ |

The United States of America states and alleges, upon information and belief:

1. This action is brought by the United States to enforce the provisions of title III of the American with Disabilities Act ("title III" and "ADA"), 42 U.S.C. § 12181 *et seq.*, and its implementing regulations, 28 C.F.R. Part 36, against Nobel Learning Communities, Inc. ("NLC"). The Attorney General has instituted this action based on reasonable cause to believe that NLC is engaged in a pattern or practice of discrimination, or, alternatively, that a person or group of persons has been discriminated against and that this matter raises issues of general public importance. The United States seeks declaratory and injunctive relief, damages, and civil penalties against NLC.

**Jurisdiction and Venue**

2. This Court has jurisdiction over this action under 42 U.S.C. § 12188(b)(1)(B) and 28 U.S.C. §§ 1331 and 1345. This Court has authority to grant a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202, and authority to grant equitable relief, monetary damages, and civil penalties under 42 U.S.C. § 12188(b)(2).

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because NLC's headquarters are situated in the Eastern District of Pennsylvania and a substantial part of the events or omissions giving rise to this claim occurred in this district.

### Parties

4. Plaintiff is the United States of America.

5. Defendant is NLC, a private, for-profit Delaware corporation headquartered in West Chester, Pennsylvania. Defendant owns or operates a network of day care centers and nursery, elementary, and secondary private schools in numerous states and the District of Columbia, including Chesterbrook Academy, Merryhill Schools, Enchanted Care, Discovery Isle, Evergreen Academy, Touchstone School, Brighton School, Lake Forest Park Montessori, The Honor Roll School, North Raleigh Country Day School, Camelback Desert Schools, Southern Highlands Preparatory School, Bethesda Country Day School, Houston Learning Academies, and Nobel Learning Communities. NLC is a public accommodation within the meaning of title III of the ADA, 42 U.S.C. § 12181(7), and its implementing regulation at 28 C.F.R. § 36.104.

### Facts

6. [REDACTED] ("S.O.") was born [REDACTED], 2003. S.O. has been diagnosed with Developmental Delayed Disorder and Pervasive Developmental Disorder, neurological disorders that substantially limit one or more major life activities including but not limited to his ability to concentrate, communicate, and interact with others. Based on his conditions, S.O. was identified for early intervention programs coordinated by the State of Pennsylvania and receives state-funded educational and behavioral support services. In June 2006, S.O. was admitted to Chesterbrook Academy in Chalfont, Pennsylvania. ("NLC-

Chalfont"). In or around October 2006, NLC disenrolled S.O. from NLC-Chalfont on the basis of disability. S.O. is an individual with a disability within the meaning of 42 U.S.C. § 12102.

7. [REDACTED] ("A.M.") was born [REDACTED], 2002. A.M. has been diagnosed with Autism Spectrum Disorder and Pervasive Developmental Disorder, neurological disorders that substantially limit one or more major life activities including but not limited to his ability to concentrate, communicate, and interact with others. Based on his conditions, A.M. was identified for early intervention programs coordinated by the State of Pennsylvania and receives state-funded educational and behavioral support services. In June 2006, A.M. was admitted to NLC-Chalfont. In or around August 2006, NLC disenrolled A.M. from NLC-Chalfont on the basis of disability. A.M. is an individual with a disability within the meaning of 42 U.S.C. § 12102.

8. [REDACTED] ("L.B.") was born [REDACTED], 2001. L.B. has been diagnosed with Autism Spectrum Disorder and Pervasive Personality Disorder, neurological disorders that substantially limit one or more major life activities including but not limited to his ability to concentrate, communicate, and interact with others. Based on his conditions, L.B. was identified for early intervention programs coordinated by the State of Pennsylvania and receives state-funded educational and behavioral support services. In or around October 2005, L.B. was admitted to NLC-Chalfont. In December 2006, NLC disenrolled L.B. from NLC-Chalfont on the basis of disability. L.B. is an individual with a disability within the meaning of 42 U.S.C. § 12102.

9. [REDACTED] ("T.C.") was born [REDACTED], 2001. T.C. has been diagnosed with Asperger syndrome, a neurological disorder that substantially limits one or more

major life activities including but not limited to his ability to concentrate, communicate, and interact with others. Based on his condition, T.C. was identified for early intervention programs coordinated by the State of Pennsylvania and receives state-funded educational and behavioral support services. In May 2006, T.C. was admitted to NLC-Chalfont. In August 2006, NLC disenrolled T.C. from NLC-Chalfont on the basis of disability. T.C. is an individual with a disability within the meaning of 42 U.S.C. § 12102.

10. **[REDACTED]** ("A.R.") was born **[REDACTED]**, 2002. A.R. has been diagnosed with Autism Spectrum Disorder, a neurological disorder that substantially limits one or more major life activities including but not limited to his ability to concentrate, communicate, interact with others, and learn. Based on his condition, A.R. was identified through early intervention programs coordinated by the State of Illinois and receives state-funded educational and behavioral support services. In May 2005, A.R. was admitted to Chesterbrook Academy in Lisle, Illinois ("NLC-Lisle"). In or around December 2006, NLC disenrolled A.R. from NLC-Lisle on the basis of disability. A.R. is an individual with a disability within the meaning of 42 U.S.C. § 12102.

11. **[REDACTED]** ("A.W.") was born **[REDACTED]**, 2002. At birth, A.W. was diagnosed with encephalocele and Chiari I malformation, neurological disorders that require him to live with a ventriculoperitoneal brain shunt, based on which NLC regarded him as substantially limited in one or more major life activities including but not limited to his ability to interact with others and care for oneself. In 2005, NLC denied A.W. admission to Lake Forest Park Montessori School in Seattle, Washington ("NLC-LFP Seattle") on the basis of disability. A.W. is an individual with a disability within the meaning of 42 U.S.C. § 12102.

12. [REDACTED] ("M.E.") was born [REDACTED], 1999. M.E. has been diagnosed with Attention Deficit/Hyperactivity Disorder (ADHD), a neurobehavioral disorder that substantially limits one or more major life activities including but not limited to his ability to interact with others, concentrate, and learn. In or around 2003, M.E. was admitted to a Merryhill School in California. In May 2008, NLC disenrolled M.E. from Merryhill School at Brookside, in Stockton, California ("NLC-Stockton") on the basis of disability. M.E. is an individual with a disability within the meaning of 42 U.S.C. § 12102.

13. [REDACTED] ("A.D.") was born [REDACTED], 2002. A.D. has been diagnosed with Autism Spectrum Disorder, a neurological disorder that substantially limits one or more major life activities including but not limited to his ability to concentrate, communicate, interact with others, and learn. In or around May 2007, NLC denied A.D. admission to Merryhill School in Sacramento, California ("NLC-Sacramento") on the basis of disability. A.D. is an individual with a disability within the meaning of 42 U.S.C. § 12102.

14. [REDACTED] (" R.R.") was born [REDACTED], 2002. R.R. was born with Down Syndrome, a physical and mental impairment that substantially limits one or more major life activities including but not limited to her ability to communicate, care for oneself, concentrate, and learn. In or around November 2005, NLC denied R.R. admission to Bethesda Country Day School in Bethesda, Maryland ("NLC-BCDS") on the basis of disability. R.R. is an individual with a disability within the meaning of 42 U.S.C. § 12102.

15. [REDACTED] ("J.H.") was born [REDACTED], 2003. J.H. has been diagnosed with Developmental Delayed Disorder, a neurological disorder that substantially limits one or more major life activities including but not limited to his ability to learn, communicate, and

interact with others. In or around August 2006, J.H. was admitted to NLC-BCDS. In or around November 2006, NLC disenrolled J.H. from NLC-BCDS on the basis of disability. J.H. is an individual with a disability within the meaning of 42 U.S.C. § 12102.

16. **[REDACTED]** ("D.B.") was born **[REDACTED]**, 2004. D.B. has been diagnosed with autism, a neurological disorder that substantially limits one or more major life activities including but not limited to his ability to communicate, interact with others, concentrate, and learn. In or around September 2005, D.B. was admitted to Merryhill School in Frisco, Texas ("NLC-Frisco"). In October 2006, NLC disenrolled D.B. on the basis of disability. D.B. is an individual with a disability within the meaning of 42 U.S.C. § 12102.

17. **[REDACTED]** ("E.V.") was born **[REDACTED]**, 2002. E.V. has been diagnosed with Developmental Delayed Disorder, a neurological disorder that substantially limits one or more major life activities including but not limited to her ability to learn, communicate, and interact with others. In September 2005, E.V. was admitted to NLC-Sacramento. In or around April 2006, NLC disenrolled E.V. from NLC-Sacramento. E.V. is an individual with a disability within the meaning of 42 U.S.C. § 12102.

18. From at least 2005, NLC instituted a policy to exclude, remove, or otherwise discriminate against children with disabilities from NLC programs at multiple NLC facilities, and has excluded, removed, or otherwise discriminated against children with disabilities at multiple NLC facilities.

19. As a result of NLC's discrimination on the basis of disability, S.O., A.M., L.B., T.C., A.R., A.W., M.E., A.D., R.R., J.H., D.B., E.V., and other children with disabilities suffered injury, including but not limited to emotional pain, mental anguish, and prolonged anxiety.

Other individuals with disabilities may be harmed if NLC continues a pattern or practice of discrimination based on disability or otherwise fails to comply with the requirements of title III of the ADA, 42 U.S.C. § 12181 et seq., and its implementing regulations at 28 C.F.R. Part 36.

20. As a result of NLC's discrimination on the basis of disability, the families of children with disabilities, including but not limited to parents, guardians or siblings, of S.O., A.M., L.B., T.C., A.R., A.W., M.E., A.D., R.R., J.H., D.B., E.V., and other families of children with disabilities were denied a full and equal opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of NLC. Other families of children with disabilities may be discriminated against if NLC continues a pattern or practice of discrimination based on disability or otherwise fails to comply with the requirements of title III of the ADA, 42 U.S.C. § 12181 et seq., and its implementing regulations at 28 C.F.R. Part 36.

21. As a result of NLC's discrimination on the basis of disability, the families of children with disabilities, including but not limited to parents, guardians or siblings, of S.O., A.M., L.B., T.C., A.R., A.W., M.E., A.D., R.R., J.H., D.B., E.V., and other families of children with disabilities suffered injury, including but not limited to the loss of child care and the attendant consequences for employment or other opportunities; the loss or denial of the opportunity to select, participate in, or benefit from the education offered by NLC's programs; financial loss, emotional pain, mental anguish, and prolonged anxiety. Other families of children with disabilities may be harmed if NLC continues a pattern or practice of discrimination based on disability or otherwise fails to comply with the requirements of title III of the ADA, 42 U.S.C. § 12181 et seq., and its implementing regulations at 28 C.F.R. Part 36.

## Causes of Action

### Title III of the American with Disabilities Act

The allegations of Paragraphs 1 through 16 are hereby re-alleged and incorporated by reference as if fully stated herein.

NLC discriminated against individuals with disabilities on the basis of disability in the full and equal enjoyment of its services, facilities, privileges, advantages, and accommodations, in violation of title III of the ADA, 42 U.S.C. § 12181 *et seq.*, and its implementing regulation at 28 C.F.R. Part 36, by:

(a) Denying an individual or class of individuals on the basis of disability or disabilities of such individual or class the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations provided in NLC's schools and/or day care centers, in violation of 42 U.S.C. § 12182(b)(1)(A)(i), and its implementing regulation at 28 C.F.R. §§ 36.201, 36.202, and 36.203;

(b) Utilizing standards or criteria or methods of administration that have the effect of discriminating on the basis of disability, in violation of 42 U.S.C. § 12181(b)(1)(D), and its implementing regulation at 28 C.F.R. § 36.204;

(c) Imposing or applying eligibility criteria that screen out or tend to screen out individuals with a disability or a class of individuals with disabilities from fully and equally enjoying any goods, services, facilities, privileges, advantages or accommodations that NLC provides, in violation of 42 U.S.C. § 12182(b)(2)(A)(i), and its implementing regulation at 28 C.F.R. § 36.301;

(d) Failing to make reasonable modifications in policies, practices, and procedures as necessary to avoid discrimination on the basis of disability, in violation of 42 U.S.C. § 12182(b)(2)(A)(ii), and its implementing regulation at 28 C.F.R. § 36.302; and

(e) Excluding or otherwise denying equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association, in violation of 42 U.S.C. § 12182(b)(1)(E), and its implementing regulation at 28 C.F.R. § 36.205.

## Prayer for Relief

WHEREFORE, the United States prays that this Court:

(a) Grant judgment in favor of the United States and declare that NLC has violated title III of the ADA, 42 U.S.C. § 12181 *et seq.*, and its implementing regulations, 28 C.F.R. Part 36;

(b) Enjoin NLC, its officers, agents and employees, and all other persons in active concert or participation with NLC, as well as any successors or assigns, from engaging in discriminatory policies and practices against individuals based on their disabilities, and specifically from failing or refusing to take appropriate steps to ensure compliance with the requirements of title III of the ADA, 42 U.S.C. § 12181 *et seq.*, and its implementing regulations, 28 C.F.R. Part 36;

(c)  Order NLC to modify its policies, practices, and procedures as necessary to bring the day care centers and nursery, elementary, and secondary private schools that NLC owns or operates into compliance with title III of the ADA, 42 U.S.C. § 12181 *et seq.*, and its implementing regulations, 28 C.F.R. Part 36;

(d)  Award compensatory damages, including damages for pain and suffering, in an appropriate amount to all aggrieved persons, including but not limited to those named in this Complaint, for injuries suffered as a result of NLC's failure to comply with the requirements of title III of the ADA, 42 U.S.C. § 12181 *et seq.*;

(e)  Assess a civil penalty against NLC as authorized by 42 U.S.C. § 12188(b)(2)(C) to vindicate the public interest; and

(f)  Order such other appropriate relief as the interests of justice require.

### Jury Demand

The United States demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Respectfully submitted this 29th day of April, 2009

FOR THE UNITED STATES OF AMERICA:

ERIC H. HOLDER, JR.
Attorney General

By /s/ Loretta King
LORETTA KING
Acting Assistant Attorney General
Civil Rights Division

/s/ John L. Wodatch
JOHN L. WODATCH
Acting Deputy Assistant Attorney General
Civil Rights Division

PHILIP L. BREEN, Special Legal Counsel
RENEE M. WOHLENHAUS, Deputy Chief
Disability Rights Section
Civil Rights Division

*/s/ Kathleen P. Wolfe*
KATHLEEN P. WOLFE
SHEILA K. DELANEY
KATHLEEN S. DEVINE
Trial Attorneys
Disability Rights Section
Civil Rights Division
U.S. Department of Justice - NYA
950 Pennsylvania Avenue NW
Washington, D.C. 20530
Telephone: (202) 353-0368
Fax: (202) 307-1198
Email   Kathleen.Wolfe@usdoj.gov
             Sheila.K.Delaney@usdoj.gov
             Kathleen.S.Devine@usdoj.gov

_____
VIRGINIA A. GIBSON
Assistant United States Attorney
Chief, Civil Division


_____
ANNETTA FOSTER GIVHAN
Assistant United States Attorney
Eastern District of Pennsylvania
615 Chestnut Street
Philadelphia, PA 19106
Tel: (215) 861-8319
Fax: (215) 861-8618

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on this 29th day of April 2009 I served the defendant by sending a true and correct copy of the Complaint and Motion to File Pleadings Under Seal via Federal Express mail to defendant's counsel of record as follows:

>Wendy Beetlestone, Esquire
>Hangley Aronchik Segal & Pudlin
>One Logan Square, 27th Floor
>Philadelphia, PA 19103

*/s/ LaShawn A. Hand/*
LaShawn Hand
Legal Assistant
United States Attorney's Office
Eastern District of Pennsylvania