```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF PENNSYLVANIA


UNITED STATES OF AMERICA        :    CIVIL ACTION
                                :
     v.                         :
                                :
NOBEL LEARNING COMMUNITIES,     :
INC.                            :    NO. 09-1818
```

<u>AMENDED MEMORANDUM</u>

McLaughlin, J.                                    March 24, 2010

      The United States of America moves to amend its complaint against Nobel Learning Communities, Inc. ("NLC"), a private, for-profit corporation that operates a private school network throughout the country.  The United States claims that NLC is engaged in discriminatory practices in violation of the Americans with Disabilities Act ("Title III or "ADA").  The government filed its original complaint on April 29, 2009, and on November 2, 2009, the Court granted in part and denied in part NLC's motion to dismiss.  The government now seeks to replead certain claims dismissed by the Court's memorandum and order. For the reasons stated below, the Court will grant in part and deny in part the government's motion to amend.

I.    <u>Background</u>

      The government brought suit against NLC to enforce Title III of the ADA, alleging that NLC discriminates against children with disabilities and their families in the operation of NLC's daycare, preschool, elementary, and secondary school

programs.  The complaint stated that twelve students with disabilities were either disenrolled or denied enrollment from an NLC school between 2005 and 2008.  The twelve students were associated with seven NLC schools located in six states across the nation.  Eleven of the twelve students were under age six.  Compl. ¶¶ 5-17.

Based on the disenrollments and denials of enrollment alleged in the complaint, the government asserted that all NLC schools engaged in a pattern or practice of discrimination, used standards or criteria of administration that have the effect of discriminating, imposed or applied eligibility criteria that screen out or tend to screen out individuals with disabilities, and failed to make reasonable modifications in policies, practices, and procedures to avoid disability discrimination.  The government further alleged that parents, guardians, and siblings were discriminated against because of their association with a child with a disability, and that other children and families may be discriminated against if NLC continues its practices.  Compl. ¶¶ 1, 6-17, 18-21.

NLC moved to dismiss all claims in the complaint except for any claim of individual discrimination against the twelve identified children.  On October 6, 2009, the Court held oral argument on the defendant's motion.  In a memorandum and order, the Court granted in part and denied in part the defendant's

motion to dismiss.

The Court held that allegations of discrimination, including a pattern or practice of discrimination, use of standards and eligibility criteria, and a lack of reasonable modifications, could go forward solely with respect to preschool children because eleven of the twelve children identified in the complaint were preschool students at the time of the alleged discrimination.  The Court dismissed any allegations of discrimination to the extent that they related to NLC's daycare, elementary, and secondary settings.  The Court also dismissed all allegations of associational discrimination because the government premised its allegations on indirect consequences that families suffered due to their association with a disabled child.  The Court held that Title III's prohibition of associational discrimination does not encompass indirect consequences.

The Court told the parties to report to the Court with how they would like to proceed in this matter.  In view of the parties' submissions, the Court issued an order on December 10, 2009, setting the parameters and timetable for discovery, which is to conclude on February 15, 2011.

On December 14, 2009, the government moved to amend its complaint to address pleading deficiencies that the Court identified in its memorandum.  The government attached a redacted version of the proposed amended complaint as Exhibit A to its

motion ("PAC").[1]  The PAC contains several new allegations.
First, it includes allegations that NLC discriminated against a
thirteenth child with a disability, A.O.R., and his family.  The
PAC alleges that A.O.R.'s parents enrolled A.O.R. in a daycare
program at an NLC school.  Months after A.O.R. was diagnosed with
autism, NLC disenrolled A.O.R., and A.O.R.'s parents found a
replacement daycare program fifteen miles away.  PAC ¶ 27.

Second, the PAC states that NLC's daycare programs are
not distinct from its preschool programs, and discrimination
occurs at both the preschool and daycare level.  The new factual
allegations concerning the thirteen children who were disenrolled
or denied enrollment from NLC schools note that the children are
daycare or daycare-preschool students.  Id. ¶¶ 8-9, 19-32.

Third, the PAC includes new factual allegations about
the parents of the thirteen children with disabilities who were
disenrolled or denied enrollment from an NLC school.  It asserts
that these parents sought to contract with NLC for daycare
services that NLC marketed to them for their own benefit, and
that the parents were denied the ability to contract for these

---

[1] The redacted proposed amended complaint is in accordance
with the Court's April 30, 2009 order, permitting pleadings to be
filed under seal.  The unredacted version of the proposed amended
complaint was filed under seal with the Court.  The redacted
complaint replaced the names of the thirteen identified children
and their families with initials, and it omitted the day and
month of the children's birth dates.  It is the same in all other
respects as the unredacted complaint.

4

services because of the parents' association with their disabled children.  It alleges discrimination against parents or guardians of children with disabilities who seek to purchase NLC daycare programs.  Id. ¶¶ 8, 11, 15-16, 19-32, 34-38.

Fourth, the proposed amended complaint includes new factual allegations about siblings of children with disabilities who were disenrolled or denied enrollment from an NLC school. Specifically, it alleges that the siblings of A.M., T.C., A.R., and M.E. were enrolled in NLC schools, and that these non-disabled students were effectively disenrolled when NLC disenrolled A.M., T.C., A.R., and M.E.  Three of the siblings, those of A.M., T.C., and A.R., attended an NLC daycare-preschool, and the sister of M.E. attended an NLC elementary school.  The complaint states that NLC knows or should know that parents want their children to attend the same facility and that disenrolling one child effectively disenrolls that child's sibling who attends the same school.  It alleges discrimination on behalf of siblings who were effectively disenrolled from daycare-preschool settings and on behalf of M.E. at the elementary school setting.  It does not seek to reallege associational discrimination by NLC in the elementary school context outside of the alleged discrimination experienced by M.E.'s sister.  Id. ¶¶ 20, 22, 24, 32, 39-44.

The defendant opposes the government's motion to amend and argues that the PAC would be futile.  It asserts that the

addition of A.O.R. does not alter the focus of the case because the allegations concerning A.O.R. are similar to those for the other identified students. NLC also argues that the addition of daycare in the PAC is an attempt to replead associational discrimination, which is futile because the allegations do not evince direct discrimination.

II. Analysis

Pursuant to the Federal Rules of Civil Procedure, a party may amend its pleading either with the opposing party's written consent or the court's leave. Fed. R. Civ. P. 15(a)(2). A court should freely give leave when justice so requires. Id. Such leave should be granted in the absence of undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of the amendment. Forman v. Davis, 371 U.S. 178, 182 (1962).

A court determines the futility of a proposed amendment by the amendment's ability to survive a motion to dismiss. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997). Under this standard, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). A claim has facial plausibility when the plaintiff pleads sufficient factual content to allow the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged.  Id.  Determining whether a complaint states a plausible claim for relief is a context-specific task that requires a court to draw on its judicial experience and common sense.  Id. at 1950.

Under this analysis, the Court concludes that the government may amend its complaint to the extent that it seeks to allege discrimination suffered by A.O.R. and at the daycare and preschool level.  It may not amend its complaint to allege associational discrimination experienced by parents and siblings because such claims would be futile.[2]

A. A.O.R.

The PAC contains factual allegations with respect to A.O.R., who at one years old was enrolled in a daycare program at an NLC school in Sacramento, California.  According to the PAC, at the time of his enrollment, A.O.R. had not yet been disagnosed with autism.  Months after his diagnosis, the school disenrolled A.O.R. because it "did not accept children with special needs." PAC ¶ 27.

This new allegation, accepted as true, states a claim

---

[2] NLC indicated in its opposition brief that if the Court grants the government's motion to amend, then NLC intends to file a motion to dismiss.  A party may file any motion that it deems fit.  The Court, however, believes that the parties may benefit from continuing their discovery and bringing motions at the summary judgment phase.

for relief that is plausible on its face with respect to disability discrimination under Title III. A.O.R. is similar to the twelve other students named in the original complaint and the PAC who were allegedly disenrolled or denied enrollment from an NLC school on the basis of discrimination. For the reasons stated in the Court's November 2 memorandum, claims related to the alleged discrimination experienced by A.O.R. are viable, and the government may amend its complaint to include these allegations.

B. Daycare/Preschool

The government may also amend its complaint to allege discrimination at both the daycare and preschool level. The PAC sufficiently pleads facts to demonstrate that NLC provides daycare and preschool services and that NLC's allegedly discriminatory policies extend to the daycare and preschool settings. According to the PAC, NLC makes no distinctions between its daycare and preschool programs.[3] The PAC also

---

[3] The Court noted in its November 2 memorandum that the original complaint described the NLC network as comprising daycare centers and nursery, elementary, and secondary schools, indicating that the levels were distinct. Compl. ¶ 5. At oral argument, the parties referred to the network as daycare centers, preschools, elementary, and secondary schools. See Hr'g Tr. 4:19-20 (Oct. 6, 2009). When asked by the Court about the twelve identified students' levels, both parties responded that eleven students were disenrolled or denied enrollment from preschools, and one student was disenrolled from an elementary school. Id. 5:12-22, 15:21-16:4. Based on the complaint and the parties' submissions, the Court held that the complaint pled facts

8

asserts that NLC denied admission to daycare and preschool programs to children with disabilities. All thirteen named children in the PAC are alleged to have enrolled or attempted to enroll in daycare or daycare-preschool programs. PAC ¶ 8, 11, 13, 19-22, 24-32.

### C. Parents

The Court will not allow the government to amend its complaint to allege associational discrimination experienced by parents of daycare-preschool children with disabilities who were disenrolled or denied enrollment from an NLC school because such an amendment would be futile. Title III of the ADA provides:

> It shall be discriminatory to exclude or otherwise deny equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association.

42 U.S.C. § 12182(b)(1)(E).

As the Court held in its November 2 memorandum, to assert a claim of associational discrimination, a plaintiff must allege that he or she experienced direct discrimination because of his or her association with a disabled person. Memorandum 15-21. Such discrimination requires a separate and distinct denial

---

regarding a policy of discrimination solely at the preschool level because eleven of the twelve students were preschool children.

9

of a benefit or service to a non-disabled person; it may not be premised on a derivative benefit or harm based on treatment towards a disabled person.  See 28 C.F.R. § 36, App. B (commentary to Section 36.205) ("It would be a violation of [the associational discrimination provision] for a daycare center to refuse admission to a child because his or her brother has HIV disease."); Larsen v. Carnival Corp. 242 F. Supp. 2d 1333, 1349-50 (S.D. Fla. 2003) (rejecting wife's associational discrimination claim when disabled husband was forced to disembark cruise ship because wife was not forced to leave ship); Simenson v. Hoffman, No 95 C 1401, 1995 U.S. Dist. LEXIS 15777, at *13-16 (N.D. Ill. Oct. 24, 1995) (rejecting parents' associational discrimination claim when child was refused treatment at hospital).

The PAC purports to allege that parents suffered from direct discrimination because daycare services provide a benefit to both parents and children, and parents were denied this benefit because of their association with their disabled children.  The benefit to parents is described as time free from their children, as "NLC markets and offers its services to working parents who need flexible daycare and educational programs."  PAC ¶ 8.  For example, A.M.'s mother "needed full-time daycare so that she would have the flexibility to pursue work and educational opportunities."  PAC ¶ 20.  R.R.'s mother

10

"needed daycare for R.R. at least six hours a day in order to study for [] exams." PAC ¶ 29; see also ¶¶ 22, 24, 27 (parents needed daycare for children to accommodate work schedules); ¶¶ 21, 28, 30, 31, 32 (parents had to find alternative arrangements, which took time and effort).[4]

These allegations do not establish distinct benefits to parents and instead read like reformulated recitations of the same claims that the Court rejected in its November 2 memorandum. Any benefit to parents premised on time free from their children is not a benefit that is separate and distinct from the benefit to the child in attending daycare. Although parents enjoy a derivative benefit in sending their children to daycare, and suffer a derivative harm due to the attendant consequences of a child's disenrollment or unenrollment, daycare is not a service for parents because children, not parents, partake in the daycare activities.[5] See Simenson v. Hoffman, 1995 U.S. Dist. LEXIS 15777 at * 13-16 (rejecting parents associational discrimination

---

[4] The PAC also alleges that parents suffered from direct discrimination because parents of disabled children had to provide NLC with their child's Individual Educational Program ("IEP"), a waiver releasing NLC from liability related to the child's academic or social progress, and an agreement to forgo services related to the IEP. To the extent that these actions constitute discrimination, however, the discrimination is directed to the child, not the parent.

[5] This is not to say that a daycare may never offer services that are separate and distinct for parents. The PAC, however, does not allege that NLC provides any such services.

claim because medical treatment was for child, not parents).

The fact that NLC's daycare provides extended hours or year-long programs does not alter the Court's analysis. To hold that such accomodations are a distinct benefit to parents would offer no limiting principle and allow parents to assert associational discrimination claims when any child, no matter what age, was disenrolled from school. Just as elementary or middle school is not a service to parents to the extent that it provides parents with time away from parenting, neither is daycare.[6]

D. <u>Siblings</u>

The Court will also not grant the government leave to amend its complaint to allege that siblings of disabled students suffered from associational discrimination because the PAC fails to allege that NLC directly discriminated against siblings. The PAC asserts that the children were "effectively disenrolled" because, in essence, parents prefer their children to attend the same school, and when one child is disenrolled, a parent disenrolls his or her sibling. Compl. ¶¶ 20, 22, 24, 32, 39-44. Nowhere in the PAC does the government allege that NLC took any

---

[6] Further, to the extent that the government argues that daycare is for parents because NLC markets its services to parents, and parents purchase the services for their children, the Court rejects it. Purchasing a service for someone else does not make the service for the purchaser.

12

direct adverse action against the non-disabled siblings. As such, this claim fails. See Larsen, 242 F. Supp. 2d at 1349-50 (dismissing non-disabled wife's associational discrimination claim because she was never asked to leave cruise ship, although husband was forced to leave); see also 28 C.F.R. § 36, App. B (commentary to Section 36.205).[7]

III. Conclusion

For the reasons stated herein, the government's motion to amend its complaint is granted in part and denied in part.

An appropriate order shall issue separately.

---

[7] NLC also argues in its opposition brief that the PAC appears to expand the cause of action and prayer for relief to assert claims and relief for children beyond the preschool (and daycare) setting. The Court does not grant any amendment that asserts an expansion of its holdings, and these sections of the PAC are to conform with the Court's memoranda.

direct adverse action against the non-disabled siblings. As such, this claim fails. See Larsen, 242 F. Supp. 2d at 1349-50 (dismissing non-disabled wife's associational discrimination claim because she was never asked to leave cruise ship, although husband was forced to leave); see also 28 C.F.R. § 36, App. B (commentary to Section 36.205).[7]

III. Conclusion

For the reasons stated herein, the government's motion to amend its complaint is granted in part and denied in part.

An appropriate order shall issue separately.

---

[7] NLC also argues in its opposition brief that the PAC appears to expand the cause of action and prayer for relief to assert claims and relief for children beyond the preschool (and daycare) setting. The Court does not grant any amendment that asserts an expansion of its holdings, and these sections of the PAC are to conform with the Court's memoranda.